| UNITED STATES DISTRICT COURT | ELECTRONIC PUBLICATION ONLY |
| --- | --- |
| EASTERN DISTRICT OF NEW YORK | |

---------------------------------------------------------------- X

KEENEN PARKER,

                        Plaintiff,      MEMORANDUM AND ORDER

       - against -

                                    09-CV-910 (JG)

THE CITY OF NEW YORK, NEW YORK
POLICE DEPARTMENT, D.A. CHARLES
HYNES, A.D.A. ROBERT WALSH, N.Y.P.D.
DET. WILLIAM HOGAN, P.O. ANDREA
SIMMONDS, AND P.O. HALE,

                        Defendants.

---------------------------------------------------------------- X

A P P E A R A N C E S:

    KEENEN PARKER
    # 09-A-4055
    Upstate Correctional Facility
    P.O. Box 2001
    Malone, New York 12953
        Plaintiff, *pro se*

    MICHAEL CARDOZO
    Corporation Counsel for the City of New York
    100 Church Street, Room 3-188
    New York, New York 10007
    By:   Bradford C. Patrick
            Attorney for Defendants

JOHN GLEESON, United States District Judge:

        Plaintiff Keenen Parker brings this action under 42 U.S.C. § 1983, alleging that he was wrongfully arrested and prosecuted for a murder of which he was later acquitted. In an earlier opinion, I dismissed the complaint except to the extent that it alleges claims against the police officers who arrested him and one of the detectives who investigated the case. Those remaining defendants now move to dismiss the action for failure to state a claim upon which

relief may be granted. On February 4, 2010, I heard oral argument, in which Mr. Parker participated by videoconference. For the reasons stated below, the motion to dismiss is granted in part and denied in part.

BACKGROUND

For the purpose of ruling on the motion to dismiss, I assume that Parker's factual allegations are true. *See, e.g., Spagnola v. Chubb Corp.*, 574 F.3d 64, 67 (2d Cir. 2009).

A. *The Investigation into the Murder of Stephan Blakney*

Parker's claims arise from his arrest, detention, and prosecution for the murder of Stephan Blakney. According to Parker, Detective William Hogan was the lead investigator in the Blakney murder case. Compl. 2. Based on statements by Bradford Hardin and Leshawn Brown, who identified Parker as the killer after viewing a photo of him, Hogan determined that Parker should be arrested for the murder. *Id.* A third witness viewed the photo and said that Parker was not the shooter. Later, however, a fourth witness, Lawrence Sumptner – himself a suspect – claimed that Parker was the murderer. Hogan issued an alert that Parker was "wanted for questioning." *Id.*

At some later date, Hogan "coerced Bashawn Holiday and Lewis Gonzales to say" that Parker was guilty, though "none of their statements matched the crime scene." *Id.* Parker asserts that the authorities knew that the witnesses against him were lying. He also claims and that an NYPD Detective named Pugliese witnessed the shooting and denied that Parker was the shooter.

B. *The Arrest*

On April 9, 2005, Parker was riding a dirt bike in the Bedford-Stuyvesant area of Brooklyn when he was stopped by Officers Andrea Simmonds and Rodney Hale. Parker

2

conceded that he had violated the traffic laws, and asked Simmonds to give him a ticket and let him move on. Simmonds, however, returned to her squad car to run a check on Parker. According to Parker, she then told him there was a warrant for his arrest. Hale then "pulled his service weapon and put it to [Parker's] head and said he'll kill [Parker] with no problem." Compl. 1. The officers arrested Parker.

C.  *The Criminal Proceedings Against Parker*

Parker was arraigned on April 11, 2005. On April 27, 2005, a King's County grand jury indicted him for second degree murder and criminal possession of a weapon in the second degree. The grand jury charged that Parker killed Blakney by shooting him with a handgun. *See* Patrick Decl., Ex. D, at 2. Parker was detained at Riker's Island while awaiting trial.

Parker was acquitted of the Blakney murder on May 24, 2006. He says that the authorities should never have brought the case, because they were "well aware of the [witnesses'] character, knowing their criminal history, knowing that their way of life consist[s] of being gang members, drug dealers and junkies who all lied and testified at trial with lies before the court, with statements that never matched the crime scene." Compl. 3.

D.  *The Proceedings in this Court*

In a complaint dated January 19, 2009, plaintiff brought this action alleging that he was unlawfully arrested and prosecuted for the Blakney murder. In addition to Hogan, Simmonds, and Hale, the complaint named as defendants the City of New York, the New York Police Department, District Attorney Charles J. Hynes, and Assistant District Attorney Robert Walsh. The complaint seeks $150 million in damages and removal of the individual defendants from their employment.

3

On May 15, 2009, I dismissed the claims against the City, the Police Department, Hynes, and Walsh pursuant to 28 U.S.C. § 1915A. *Parker v. City of New York*, No. 09-CV-0910 (JG), 2009 WL 1373374 (E.D.N.Y. May 15, 2009). In that order, I noted that Parker was convicted of murder on May 9, 2009, and assumed that the conviction was for Blakney's murder. *Id.* at *3. In fact, Parker was convicted on that day of a different murder, that of Lawrence Sumptner, who had allegedly identified Parker as Blakney's killer.[1] The acquittal on the Blakney murder, however, makes no difference to my earlier decision; all claims against the City and the Police Department fail because Parker does not allege an unconstitutional policy or custom attributable to the City, *id.* at *2, and any suit against Hynes or Walsh is precluded by absolute prosecutorial immunity, *id.* at *3.

The remaining defendants – Hogan, Simmonds, and Hale – now move to dismiss the complaint, arguing that the claims against them are barred by the statute of limitations, by the presence of probable cause for the arrest and prosecution, and by qualified immunity.

DISCUSSION

A. *The Standard for Rule 12(b)(6) Motions*

Motions to dismiss under Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g., Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." (internal quotation marks omitted)). Accordingly, I must accept the factual allegations in the complaint as true, *Erickson v. Pardus*,

---

[1] On July 15, 2009, Parker brought a separate § 1983 action based on his arrest and prosecution for the Sumptner murder. On August 5, 2009, I dismissed that action under 28 U.S.C. § 1915A, without prejudice to a partial renewal in the event that his conviction is later overturned. *Parker v. City of New York*, No. 09-CV-3026 (JG), 2009 WL 2414426 (E.D.N.Y. Aug. 5, 2009).

551 U.S. 89, 93-94 (2007) (per curiam), and "draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

In reviewing the complaint, I am mindful that "a *pro se* complaint … must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S at 94 (internal quotation marks omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," I must grant leave to amend it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

B.  *Civil Rights Claims*

To maintain a § 1983 action, Parker must show that the defendants, acting under color of state law, deprived him of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

Construed liberally, Parker's complaint may be understood to allege three constitutional claims against the remaining defendants. First, Parker's claim that his initial arrest violated the Fourth Amendment suggests a false arrest claim. *See, e.g.,* Compl. 1 ("I was [illegally] detained, violating my 4th Amendment right on false accusations of having a warrant stated by Officer Andrea Simmonds"). Second, Parker's objection to the manner in which he was arrested appears to allege an excessive force claim against Officer Hale. *See id.* ("Officer Hale pulling his service weapon out on an unarmed man is deemed to be cruel and unusual violating my 8th Amendment right!"). Third, the complaint may be read to assert a malicious prosecution claim against Detective Hogan, whom Parker accuses of "tampering with evidence and coercing witnesses." *Id.* at 2.

C.   *The Statute of Limitations*

Defendants contend that the false arrest claim and the excessive force claim are time-barred. I agree.

In § 1983 actions, the applicable limitations period is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In New York, that period is three years from the date the cause of action accrues, *see Pearl v. City of Long Beach*, 296 F.3d 76, 79-80 (2d Cir. 2002), and a § 1983 cause of action accrues when the plaintiff knows, or has reason to know, of the injury that is the basis of his action. *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994). It is apparent from the face of the complaint that Parker's claim for excessive force accrued on April 9, 2005, the day he was arrested. The statute of limitations on the false arrest claim began to run two days later, at the time Parker was arraigned.[2] *See Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process – when, for example, he is bound over by a magistrate or arraigned on charges."). This action was filed at least three years and nine months after any cause of action for false arrest or excessive force accrued, and Parker suggests no reason for tolling those limitations periods.

Accordingly, Parker's false arrest and excessive force claims are untimely. The three-year statute of limitations for malicious prosecution, however, did not start running until May 24, 2006, when the criminal proceedings terminated in his favor. *See, e.g., Wallace*, 549

---

[2]   Though the date of Parker's arraignment does not appear in the complaint, I take judicial notice of that date, which appears in the record of state court proceedings submitted by defendants as Exhibit E to the Patrick Declaration. *See, e.g., Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("Courts routinely take judicial notice of documents filed in other courts ... not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings.").

U.S. at 392 (favorable termination is an essential element of a malicious prosecution claim). The malicious prosecution claim against Hogan, therefore, is timely.

D.     *The Malicious Prosecution Claim*

In order to prevail, a malicious prosecution plaintiff must establish four elements. First, the plaintiff must prove that the defendant initiated a criminal proceeding. Second, the proceeding must have been terminated favorably to the plaintiff. Third, the plaintiff must prove that there was no probable cause for the criminal charge. Finally, the defendant must have acted maliciously. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)).

A prosecution was initiated against Parker, and it terminated in his favor. At this stage of the proceedings, Hogan focuses on the third essential element of a malicious prosecution action. He contends that the claim must be dismissed at the pleadings stage on the ground that Parker cannot establish the absence of probable cause for the prosecution. Probable cause – "such facts and circumstances as would lead a reasonably prudent person to believe plaintiff's guilt," *Colon*, 60 N.Y.2d at 82 – defeats a malicious prosecution claim, even where the plaintiff shows malice. The grand jury determined there was probable cause to try Parker for Blakney's murder, and in a malicious prosecution claim, a grand jury indictment creates a presumption of probable cause. *Rothstein v. Carriere*, 373 F.3d 275, 283 (2d Cir. 2004).

Hogan argues that Parker's allegations are insufficient as a matter of law to rebut the presumption of probable cause. In New York, the presumption of probable cause in a malicious prosecution claims "may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld

7

evidence or otherwise acted in bad faith." *Colon*, 60 N.Y.2d at 82. To survive dismissal, then, a plaintiff bringing a malicious prosecution after indictment must plead facts that, if proved, would show that the indictment was " 'produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.' " *Rothstein*, 373 F.3d at 283 (quoting *Colon*, 60 N.Y.2d at 82).

I conclude that Parker has made sufficient allegations of fraud on the grand jury to survive the Rule 12(b)(6) motion. Certainly, I recognize that there are facts on the face of the complaint – several witnesses apparently identified Parker as the shooter – that may well doom Parker's ultimate chances of success in establishing the absence of probable cause. Nevertheless, the following allegations in Parker's complaint, if supported by evidence, would be sufficient to overcome the presumption. Parker alleges that Hogan was aware of an eyewitness account from Detective Pugliese, who stated that Parker was not the shooter. Parker claims that Hogan knew that the witnesses against Parker were lying, and, moreover, that Hogan coerced witnesses into testifying against Parker. These allegations would suffice to show that Hogan "did not [make] a complete and full statement of facts either to the Grand Jury or to the District Attorney," that Hogan "misrepresented or falsified evidence," or "withheld evidence or otherwise acted in bad faith." *Colon*, 60 N.Y.2d at 82.

Hogan objects that Parker makes no specific allegation that Hogan, or any of the other witnesses, testified at the grand jury proceedings. Given that grand jury proceedings are secret and sealed, however, it would unreasonable to require Parker to provide in his complaint a detailed account of the precise mechanism whereby the grand jury was deceived. Nor do I read New York law as requiring plaintiff to provide such an account. *See, e.g., Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003) (plaintiff's post-indictment malicious prosecution claim

8

survived summary judgment based on evidence that police officers lied throughout the course of the investigation).

In short, Parker has pled facts that would establish that the indictment was the product of bad faith police conduct, and that Hogan lacked probable cause to prosecute Parker. The viability of Parker's complaint is thus unaffected by the Supreme Court's recent admonitions that only facts, not legal conclusions, are entitled to the presumption of truth at the motion-to-dismiss stage. *See Iqbal*, 129 S.Ct. at 1949.

E.   *Qualified Immunity*

As an alternative basis for dismissal, Hogan claims that he is entitled to qualified immunity. Qualified immunity protects government employees from civil liability where their conduct in the performance of their discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992). The immunity determination turns on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, 129 S.Ct. 808 (2009).

The right to be free from malicious prosecution in the absence of probable cause is a well-established constitutional right. Because Parker has successfully pled the absence of probable cause, his allegations are sufficient to overcome the qualified immunity defense on a motion to dismiss. *See Boyd*, 336 F.3d at 75 n.5 (noting that, in malicious prosecution actions, the probable cause question often merges with the qualified immunity question). Assuming that Parker's allegations are true, it would have been clear to a reasonable officer in Hogan's position that his participation in the prosecution of Parker was unlawful. Accordingly, at this stage of the

9

proceedings, the defense of qualified immunity does not bar Parker's malicious prosecution claim.

## CONCLUSION

For the reasons stated above, only the malicious prosecution claim against Hogan survives. Defendants' motion to dismiss the complaint is therefore granted in part and denied in part.[3]

So ordered.

John Gleeson, U.S.D.J.

Dated: April 28, 2010
Brooklyn, New York

---

[3] The success or failure of Parker's efforts to overcome the presumption of probable cause may turn on the evidence presented to the grand jury. Accordingly, Parker will likely seek to examine the grand jury minutes. As defendants' counsel noted during oral argument, there are legitimate issues regarding the nature and extent of Parker's access to those minutes. I leave those issues, and others concerning discovery, in the capable hands of Judge Bloom.